Jos. A. Clay, Guardian of Elizabeth M. Rush, in Pennsylvania, *vs.* William J. Brittingham, Guardian in Maryland, and Trustee.

*Guardian and Ward — Foreign Guardian — Proceeds of the Sale of an Infant's real estate under sections 36 and 37, of Article 16, of the Code.*

Where the real estate of a non-resident infant has been sold by a decree of a Court of Equity, under the provisions of sections 36 and 37, of Article 16, of the Code, on the application of the guardian, appointed and resident in this State, the funds arising from such sale, will not be transferred to the guardian, appointed in the State where the infant resides.

Appeal from the Circuit Court for Somerset County, in Equity.

In October, 1867, the appellee, as guardian of Elizabeth M. Rush, by appointment of the Orphans' Court of Somerset county, applied under sections 36 and 37, of Article 16, of the Code, to the Circuit Court for said county, in Equity, setting forth that his ward was seized in fee under the will of her grand-father, of certain real estate situated in said county, that the estate was unproductive, and that it would be greatly for the advantage of his ward to have the same sold, and the proceeds invested under the direction of the Court; and praying the Court to order a sale and investment accordingly. In January, 1868, the Court passed a decree for the sale of the property, and appointed the appellee, trustee, to make such sale. The sale was made, reported to the Court and finally ratified. In August, 1870, the trustee reported to the Court that he had in hand the sum of $3,145.89, as the cash instalments paid him on account of the purchase money, and asked that an order might be passed directing him, after deducting certain expenses therefrom, to invest the balance in some safe and profitable investment. In October following the Court ordered the money to be invested in the regis-

tered bonds of the United States, and directed the bonds to be brought into Court, subject to its order.

On the 12th of January, 1871, the appellant, as guardian of the said Elizabeth, by appointment of the Orphans' Court for the city and county of Philadelphia, in the State of Pennsylvania, filed an interlocutory petition in the case, under section 196 and following sections, of Article 93, of the Code, praying the Court to order a transfer and delivery to him of the investments of the fund, and the securities held therefor. The appellee resisted this application no further than was necessary for his own protection, and the preservation of the fund ; if the same could be lawfully transferred according to the prayer of the petition, and with safety to him, he was very willing that it should be done.

On this petition, the Circuit Court (FRANKLIN and IRVING, J.) delivered the following opinion :

"The fund sought to be reached by the interlocutory petition in this cause, was produced by the sale of certain real estate, lying in Somerset county, Maryland, belonging to Elizabeth M. Rush, the infant defendant, which sale was made in pursuance of a decree of this Court, passed on the 15th day of January, 1868, on petition of the guardian, under and by virtue of the 36th and 37th sections of Article 16, of the Code of Public General Laws. The interlocutory petitioner asks to have the fund transferred from the trustee under said decree, to his possession, as guardian in Philadelphia, under the 196th and following sections of Article 93, of the Code. The language of this section, and those which follow, is very broad, but in its construction, it must be considered in connection with all other laws bearing on the same subject-matter, and must be interpreted, if possible, so that all may stand together. All the enactments in reference to the care and management of the property of infants, are parts of one system, and being in *pari materia,* must be construed as one law. Keeping these principles in view, let us examine the

36th and 37th sections of Article 16, of the Code, under which the sale in this case was made, and the 45th, 46th and 48th sections, of the same Article, relating to the management and disposition of the money arising therefrom. The two first confer the power of sale of either real or personal property of an infant, if it shall appear to be for the " benefit and advantage of such infant," and establish the order of proceeding; then follows:

" Sec. 45. The money arising from such sale, to be invested as the Court shall direct, in the name of such infant, and the surplus interest, after deducting what may be necessary for the maintenance and education of such infant, shall also be invested as aforesaid, and such investment shall not be transferred, except by order of the Court, and any transfer without such order, shall be void."

" Sec. 46. No part of the principal arising from such sale of any real estate, shall be applied to the maintenance of any infant, unless *the Court* shall consider it necessary, and order the same to be done."

" Sec. 48. Upon the death of such infant under age, intestate, and without issue, the proceeds of such sale shall descend or be distributed as the property or estate would if it had not been sold."

The intent and meaning of these enactments can hardly be mistaken. The only purpose for which the sale of an infant's real estate is allowed under this section, is to better the investment, or, in the language of the law, it must be " for the benefit and advantage of such infant." The sale does not, to all intents and purposes, work a conversion of the property from realty to personalty; its descendible qualities, at least, are still those of realty, and upon the death of the infant under age, intestate and without issue, it is still, in contemplation of law, *land,* and its descent must be governed by the *lex rei sitæ* before sale. Unlike funds belonging to an infant derived from other sources, it does not pass into the hands of the guardian, to be by him invested at his discretion, or under the order of

the Orphans' Court; neither can its principal be invaded, as in ordinary cases, by such Court. Its entire management and custody is retained by the Court, under whose authority the land was sold, or at farthest, perhaps, some other tribunal having concurrent equitable jurisdiction therewith. These provisions were evidently intended to preserve the fund in order that it might be reached, so as to be subject to the operation of the 48th section of the Code above quoted, should the contingencies therein named arise. It is hardly to be presumed that the Legislature, when it provided so carefully for the investment of the money arising from the sale of an infant's real estate, guarded so strictly against any invasion of its principal, and directed it to descend as realty to the heirs-at-law, should, at the same time, have opened a way by which all those provisions might be evaded. If the safe-guards thrown around this fund are to be of any value, the jurisdiction of our Courts over it must be retained. The enforcement of our laws cannot with safety be left to foreign tribunals, administering a different system of jurisprudence. When this money passes into the hands of the foreign guardian, as prayed for in this petition, it passes beyond the jurisdiction of this Court. It may, and probably will, in Pennsylvania, lose its character of *quasi* realty, and become subject to the laws of the infant's domicil. The intention of the Legislature to protect it in certain contingencies for the heirs, will be defeated, and that feature of the law become a nullity. But, says the Court of Appeals, "all statutes in *pari materia* are to be construed as one law;" "where terms and statutes seem contrary to each other, if by interpretation they may stand together, they shall stand." "Where it is manifestly the intention of the Legislature that a subsequent Act shall not control the provisions of a former Act, the subsequent Act shall not have such operation, even though the words of it, taken strictly and grammatically, would repeal the former Act. See *Chesapeake & Ohio Canal Co. vs. Baltimore & Ohio R. R. Co., 4 Gill & Johnson*, 1, and authorities there cited.

Believing it to have been the plain intent of the Legislature, that money arising from the sale of an infant's real estate under the provisions of the 36th and 37th sections, Article 16 of the Code, should be preserved as land, as near as possible, consistently with the proper maintenance of the infant, and that it should be kept within that jurisdiction, which would control its transmission as land to those entitled as heirs, under the law of the State where the land was situated, we cannot sanction such a construction of the 196th and following sections of Article 93, as would defeat that intention. It is true the language of these sections of that Article is very broad; it is, " if any non-resident infant shall be entitled to, &c., the proceeds of any sale made under a decree of any Court of Equity, &c., and such infant has a guardian regularly appointed in the State, district or territory of the United States in which such infant resides, such foreign guardian may obtain an order from the proper Court for the payment, &c., of such proceeds, &c., upon the terms prescribed in the next succeeding section." But full effect will be given to these provisions by construing them to apply to those cases where there has been a perfect conversion of the realty into personalty, and a fund thereby created which ought to follow the domicil of its owner, and be governed in its transmission by the law of that domicil. Thus all the laws which have been passed in *pari materia* will stand together, and the whole intention of the Legislature be gratified, and not otherwise. This construction seems to be further sustained, and the policy of the law illustrated by the 200th and 201st sections of Article 93, by which the interest of any person who is entitled to a reversion, remainder or executory devise, in the money or property claimed, is protected. The care taken to keep such funds within the jurisdiction of the Court for the benefit of those interested, although their title fastened upon the funds wherever they might be, would forbid any construction which would abandon money situated like that mentioned in these proceedings, to a foreign tribunal, unless the language was so

express that there was no escape from it.   It is more reasonable to suppose that they considered the money as land, incapable of being removed, and, therefore, did not provide for its removal in any contingency."

·   In accordance with the foregoing opinion, the Court dismissed the petition, and directed the costs of the proceeding to be paid out of the fund sought to be transferred.   The petitioner appealed.

The cause was argued before BARTOL, C. J., GRASON, MILLER, ALVEY and ROBINSON, J.

*J. U. Dennis* and *John Scott,* for the appellant.

Having complied with all the provisions in sections 197 and 198 of Article 93, the appellant was absolutely entitled to a transfer of the funds under the express provisions of section 196, that section making no exception, and its words not admitting of any, when the conditions thereof are complied with.   The construction of language so broad and unmistakable in its import cannot be controlled by implication, unless that implication be *inevitable.*

Even if the terms of this section are not conclusive, it is evident, from a consideration of all the provisions under this sub-division of Article 93, from sections 195 to 203 inclusive, that the Legislature intended the real and personal estate alike, to be under the control of the foreign guardian.   Section 203 gives authority to the Orphans' Court to appoint a guardian in this State to a non-resident infant " entitled to any property, *real* or *personal,*" here, *only* when the infant has no guardian in the place of residence ; thus recognizing, by implication, that where the infant *has* a guardian in the place of residence, *he* is the proper person to take charge of the property ; and section 195, (which is a part of the same Act of 1853, ch. 422,) prescribes the manner and terms of the delivery to him of such property.   These sections, construed together, show that the intention was, that in case there was a

foreign guardian duly bonded, &c., he should, upon comply-ing with certain prescribed terms, be absolutely entitled to the possession of the estate of his ward, both *real* and *per-sonal.* Being entitled to the *possession* under section 195, section 196 confers upon him the privilege of transfer, not using the term "real estate," since land cannot be transferred *in specie;* but as the decree of a Court of Equity alone puts it in a form to be moved, the very use of those words show that it was designed to cover just this case of proceeds aris-ing from the sale of real estate.

This whole sub-division under Article 93, entitled "guar-dians and infants not residing in this State" is to be construed as a *particular* law, applicable only to the special and excep-tional case of a non-resident infant and guardian, and conse-quently not to be controlled or limited in its application by the *general provisions* relating to infants' estate embraced in sections 36 and 37 of Article 16, and elsewhere; according to the well-settled rule, that where a *general* intention is ex-pressed in a statute, and also a *particular* intention incom-patible therewith, the latter is to be considered in the nature of an exception. *Stockett, Admr. of Bird, vs. Bird's Admr.,* 18 *Md.,* 484.

The objection urged by the Court below to the removal of the funds in this case, that they would then become subject to the laws of descent of the State of Pennsylvania, contrary to the intention of section 48, applies, with precisely the same force, to the removal of the proceeds of sale of personal property, or the proceeds of the sale of real estate wholly converted; because, in both of these cases, the *funds would be subject to the laws of distribution* of the *State of Pennsyl-vania,* contrary to the intention of section 48, which pre-scribes the mode of *distribution* as well as of *descent.* If the provisions of section 48, of Article 16, do not exempt personal property, nor the proceeds of the sale of real estate, wholly converted, from the operation of section 195, of Arti-cle 93, as the Court in their opinion admit—neither does

it exempt the proceeds of the sale of real estate still unconverted.

There are but few if any cases in which an infant can "be entitled to the proceeds of any sale made under a decree of a Court of Equity," where the sale does not take place under and by virtue of sections 36 and 37 of Article 16 ; and hence to hold that the proceeds of such sales cannot be transferred to the foreign guardian, is to nullify almost wholly the provision in section 196 of Article 93, relating to "sales made under a decree of the Court of Equity."

*J. W. Crisfield*, for the appellee.

BY THE COURT: A majority of this Court thinking the order appealed from correct, affirm such order for the reasons well assigned in the opinion of the Court below.

*Order affirmed.*

(Decided 24th June, 1871.)

GRASON, J., delivered the following dissenting opinion in which BARTOL, C. J., concurred.

This appeal is taken from an order or decree of the Circuit Court for Somerset county, dismissing the petition of the appellant praying the passage of an order directing the appellee to pay over to him certain funds in his hands, the proceeds of sales of real estate, sold under the decree of said Court. The question for decision arises upon the construction of section 196, of the 93d Article of the Code, which provides that, if any non-resident infant shall be entitled to any legacy, bequest or distributive share, or to the proceeds of any sale, made under a decree of a Court of Equity, or to any money or personal property in the hands of a trustee appointed by will, or shall be entitled to the proceeds of any sales of property in this State, or to any legacy, bequest or distributive share of any personal property in the hands of any administrator or guardian in this State, and such infant has a guardian regu-

larly appointed in the State, district or territory of the United States, in which such infant resides, such foreign guardian may obtain an order from the proper Court for the payment, transfer or delivery of such proceeds, legacy, bequest or distributive share, upon the terms prescribed in the next succeeding section. The 197th section provides that the foreign guardian shall file a petition stating that he has been duly appointed guardian to such infant by the proper authority of the State, district or territory, where the infant resides, that he hath given good and sufficient security for the faithful performance of his trust as guardian, and that as guardian he then has the custody of the person of such infant; and setting forth the entire amount of personal property, including that in this State, belonging to such infant, and also the income of the real estate, if any, of such infant, which hath come, or is likely to come, into the hands of such guardian, which petition shall be accompanied by a duly authenticated copy of the record of his appointment and qualification as such guardian, and of the bond, or other instrument or security, so given as aforesaid. Section 198 provides that the petition shall be verified by the affidavit of such guardian, and the sufficiency of the security shall be proved by the affidavit of the chief clerk or prothonotary of the Court by whom such security was taken, or by the affidavit of some other disinterested and credible witness. The money, sought to be transferred to the foreign guardian by the petition filed in this case, is the proceeds of real estate sold under a decree of the Circuit Court of Somerset county, under sections 36 and 37, of the 16th Article of the Code. We think it perfectly clear that section 196 applies only to personal property in this State belonging to a non-resident infant. This is shown by the context, and is apparent also from the terms of section 197.

It was contended in the argument in this Court that the 196th section does not necessarily embrace the proceeds of sales of infants' real estate, but that, even if it does, that section must be construed in connection with sections 45, 46 and

48, of Article 16, of the Code.    The language used in section 196 is too plain and comprehensive to leave room for a doubt that the proceeds of such sales are embraced, for they are mentioned and specified in those very words.

Assuming that the sections of Article 93, before cited, are *in pari materia* with the sections of Article 16, let us so construe them, and see whether they cannot all stand together. Section 45 provides that "where the real estate of an infant is sold upon the application of his guardian or *prochein ami,* the money arising from such sale shall be invested as the Court shall direct, in the name of such infant, and the surplus interest, after deducting what may be necessary for the maintenance and education of such infant, shall also be invested as aforesaid, and such investments shall not be transferred except by order of the Court, and any transfer without such order shall be void."   It has been argued that, when the proceeds have been thus invested, they cannot be transferred to a foreign guardian; that the law does not contemplate such transfer and that the Courts will not permit its transfer to a party without their jurisdiction, when they would not deliver possession of the fund even to a guardian residing within their jurisdiction and subject to their control.   It is true that a guardian, living in this State, will not be permitted to take possession of the proceeds of the sales of his ward's real estate sold under sections 36 and 37.   But, when a foreign guardian files his petition and complies with the requirements of the 196th, 197th and 198th sections of the 93d Article of the Code, the Court is then required by the express provisions of the 196th section to deliver the funds to him.   Until such application is made, the proceeds of the sale will be invested under the direction of the Court, and preserved and managed in the same manner as the proceeds of sales of lands belonging to infants residing within this State.   But it is argued that the sale of an infant's real estate does not wholly convert it into personalty because section 48, of Article 16, enacts that upon the death of such infant under age, intestate and without

Clay, Guardian, *vs.* Brittingham, Guardian.

issue, the proceeds of the sales shall descend or be distributed, as the property or estate would if it had not been sold. The sale of an infant's real estate certainly changes the character of the property, and the proceeds thereof are clearly personal property, and in the event of the death of the infant such proceeds of sales would be distributed to its personal representatives, in the absence of statutory provision to the contrary; and all that is done by the 48th section, is to invest this personalty with one of the characteristics of realty in certain contingencies, that is, to make it descend to the infant's heirs, in the event of his dying under age, intestate and without issue. As a further reason against the right of the foreign guardian to have this fund transferred to him it is urged that, when so transferred to the foreign guardian, and removed to another State, it would, in case of the infant's death, be distributed according to the laws of that State, and thus the provisions of our law be defeated, and the heirs of the infant, for whose benefit it is alleged the 48th section was intended, would be deprived of the property. It is very evident that it was intended by that section that, if the infant died under age, intestate and without issue, while his funds remained invested within this State, they would have descended as the real estate would, had it not been sold, and this was all that section 48 was intended by the Legislature to accomplish. As long as money, the proceeds of the sales of real estate, belonging to an infant living out of this State, remains herein invested under the direction of a Court of Equity; so long is it subject to descend as provided for by section 48; but upon being transferred they at once lose that incident attached to them by section 48, and become subject to the laws of distribution of the State where the infant resides.

It is also said that a Court of Equity of this State has no jurisdiction, under section 36, to sell the real estate of an infant except the provisions of the following sections are complied with, one of which, it is contended, is the investment of the proceeds of sale under the direction of the Court, as pro-

vided by section 45, and their remaining so invested during the minority of the infant, and subject to the provisions of that section and sections 46 and 48. It is perfectly clear that the proviso in section 36 refers only to those sections following which prescribe the particular mode of proceeding to be pursued *before* the decree of sale, as a necessary preliminary to the exercise of the power, and that it does not refer to those sections which govern the management and disposition of the money after sale. It is conceded that all proceeds of sales of real estate belonging to an infant residing out of the State, except such as arise from sales under section 36, can be delivered to the foreign guardian. We do not perceive the reason for this exception; these are equally within the words of the 196th section. But it is said that the provisions of section 46 would be defeated by a transfer of the said proceeds of sale to the foreign guardian; and from this it is argued, that it was not intended by the Legislature that, when once invested, they should be withdrawn.

That section enacts that "no part of the principal arising from such sale of any real estate, shall be applied to the maintenance of any infant, unless the Court shall consider it necessary and order the same to be done." This is a wise provision, intended for the preservation and safety of the fund, and the disposition of it, under proper authority, for the best interests of the infant, so long as it remains under the direction and control of the Court. But this section in no wise conflicts with the right of the foreign guardian to apply for and receive it whenever he may think proper to do so, under the provisions of sections 196 and 197 of Article 93. Even where other parties are entitled to the property by way of revision, remainder or executory devise, after the particular previous estate of the infant terminates, the foreign guardian is entitled to receive it upon complying with the provisions of section 201 and the previous sections of Article 93 before referred to. If property or money, in which the infant has but a life estate, can be removed to another State to the possession

of a foreign guardian, when parties living in this State have a vested absolute title thereto, to take effect in possession at the infant's death, we cannot see why a fund, in which the infant has an absolute estate, should be withheld from him and continued under the control of our Courts, and subject to our laws. The foreign guardian is appointed by the tribunals of the place where the infant resides, gives bond for the faithful discharge of his duty, is under the control and direction of the Court appointing him, to which he has to account for the manner in which his ward's estate is managed, and it is difficult to perceive any objection to the ward's personal property and money being delivered into his possession by the Courts of this State, upon his satisfying them, and given bond with security, that he has been appointed guardian, and has complied with the requirements of our laws. The foreign guardian, who has the custody of the person of his ward, seems to be the proper party to have the custody of the ward's funds also, in order that he may be able, with more convenience and promptness, and with less expense, to expend such part of it, under the directions and control of the tribunals of his and the infant's domicil, as may be required for the maintenance and education of his ward. The views herein taken of the sections of the 16th and 93d Articles of the Code, reconcile whatever in them may seem to be incongruous and conflicting, and give effect to all of them. A careful consideration of these sections leaves no doubt upon our minds that the appellant in this case is entitled to receive the funds in question, upon complying with the requirements of the law. These views appear to us to derive additional force from a reference to the original statutes. The Acts of Assembly in relation to foreign guardians, now embodied in the Code in Article 93, to which we have referred, were passed long after those relating to the powers of Courts of Chancery, now contained in the 16th Article, and if the original statutes were now before us for construction, and were found to be in conflict, those last enacted would be construed

as repealing, *pro tanto,* the former laws, and would be operative. We think the provisions of the Code ought to receive the same construction.

Entertaining these views, we think the decree of the Court below, dismissing the petition, ought to be reversed.