## MERCANTILE-SAFE DEPOSIT AND TRUST COMPANY, TRUSTEE *v.* SLATER, RECEIVER ET AL.

[No. 118, September Term, 1961.]

*Decided January 29, 1962.*

The cause was argued before HAMMOND, PRESCOTT, HORNEY, MARBURY and SYBERT, JJ.

*J. Cookman Boyd, Jr.,* for the appellant.

*Harry E. Silverwood* for the appellees.

HORNEY, J., delivered the opinion of the Court.

The question presented is whether the estate to which an incompetent residing in Great Britain is entitled as a remainderman under certain testamentary trusts presently administered in an equity court of this State, may be transferred to a *receiver* who had properly qualified as such under the laws of that country.

Samuel Magill Bryan and Melissa Anne Shipley Bryan had a daughter, Helen Gertrude Bryan, who was twice married, and, as Helen Gertrude White Young, died on February 10, 1959, leaving surviving her three children: a daughter, Dorothy White Clowe, a son, Bryan M. Young, and another son, John Sinclair Young, who is presently an incompetent.

Under the provisions of the respective last wills and testaments of her father and mother, the trusts created for the benefit of the daughter terminated at her death, and the corpus of the trusts as well as the undistributed income devolved upon her children in equal parts. The respective shares of Dorothy White Clowe and Bryan M. Young have been distributed and paid to them, but the share of John Sinclair Young is still in the hands of the trustee pending the decision in this case.

John Sinclair Young, who is of full legal age, has been for more than two years and still is a patient in Winwick Hospital, a mental institution at Winwick, Warrington, England, and the prognosis is that he will continue as a patient for an indefinite period.

Upon the application of the half-sister of the patient, the Court of Protection at London, in a proceeding therein entitled "In the Matter of John Sinclair Young, 1959 No. 2829," on February 17, 1960, appointed Philip Slater as the receiver of the estate of the patient and required of him an appropriate fidelity bond.

Among other things, the order appointing the receiver authorized him to take such steps as might be necessary to procure a transfer into the name of the patient, or the receiver as nominee, of the investments comprising the distributive share to which the patient is entitled under the respective wills of his grandfather and grandmother, and to dispose of

such other investments as are not transferable and to collect and transmit the proceeds thereof to England, together with such cash balance belonging to the patient as may remain in the hands of the trustee.

There is no dispute as to the facts. Nor is it controverted that the share remaining in the hands of the trustee belongs to the incompetent remainderman beneficiary.

Since a state, or nation, has the exclusive right to regulate matters pertaining to ownership of property within its territorial limits, it may prescribe not only the procedures by which title may be acquired, retained and transferred, but also what persons shall be permitted to enjoy the privileges of ownership. 1 Hyde, *International Law*, § 203 (2nd rev. ed. 1945). See also *Mager v. Grima*, 49 U. S. (8 How.) 490 (1850). Ordinarily, however, most sovereign states do not unreasonably prohibit aliens, even those who reside outside of its domain, from acquiring, retaining and transferring property located within its territory. To that end numerous treaties between this country and other sovereign nations provide for the enjoyment of these privileges by such persons. There is such a treaty between the United States and Great Britain. In 1 Malloy, *Treaties,*[1] pp. 774-775, Art. II of the treaty provides that:

> "The citizens or subjects of each of the Contracting Parties shall have full power to dispose of their personal property within the territories of the other, by testament, donation, or otherwise; and their heirs, legatees, and donees, * * * whether resident or non-resident, shall succeed to their said personal property, and may take possession thereof either by themselves or by others acting for them, and dispose of the same at their pleasure * * *."

We assume that John Sinclair Young is a British subject, though the record is not clear. If he is not, we should assume that he is a citizen of the United States with the same substantive right. In either event, the trustee, though conceding

---

1. The statutory reference to the treaty with Great Britain is 31 Stat. 1939.

that the remainderman beneficiary has a substantive right to the estate remaining in its hands, doubts the power of the court to order a transfer of it to a fiduciary residing outside of this country. Thus, the question for us to decide is whether the law of this state is such as to permit the order to stand. The trustee (as a precautionary measure for its protection) contends that the right of transferral is limited to one of the states (or a district or territory) of the United States and may not be extended to include a foreign country.

There are only two Maryland statutes concerning the transfer of property belonging to an adult nonresident, which have a direct bearing on the problem. One of them, now codified as Code (1957), Art. 16 [Chancery], § 188, which was originally enacted as § 1 of Ch. 245 of the Acts of 1876, and was subsequently amended by Ch. 530 of the Acts of 1894 so as to afford the prescribed procedures to lunatics as well as to cestuis que trustent, provides that a trustee under a deed or will, or by appointment of court, or the committee of a lunatic, "having funds, money or property of any kind" belonging to a cestui que trust or lunatic may, upon the order of a court having jurisdiction, "transfer, assign or pay over the principal of * * * the trust estate," to any other fiduciary "appointed as such by a *court in any state of competent jurisdiction* [2] * * * whether * * * [the transferee] resides in the State of Maryland *or elsewhere.*" The other statute, now codified as Code (1957), Art. 16, § 146, originally enacted as § 123A of Ch. 712 of the Acts of 1920, provides that "[i]f any nonresident non compos mentis, declared to be such by a *court of competent jurisdiction in the state, district or territory of the United States* in which such non compos mentis resides" is entitled to any personal property in the hands of a domestic fiduciary and such incompetent "has a committee or guardian regularly appointed where he or she resides, such foreign com-

2. All italicizations of any part of the quoted portions of this statute and other statutes and rules referred to herein have been supplied for the purposes of this opinion.

mittee may upon application * * * obtain an order for the * * * transfer" of such property.[3]

While it is obvious that the terms of § 146 are (as the parties concede) restricted to a person who has been declared to be non compos mentis by a court in the *state* of the United States where he resides, it appears that § 188, in providing that the transferee may reside in this *State or elsewhere,* would permit the transfer of property to a fiduciary in a foreign country. In addition to these observations, we note that the provisions of both of these statutes are essentially procedural and not substantive. This being so, the procedural aspects of §§ 146 and 188 of Art. 16 as well as § 216 of Art. 93 [Testamentary Law], in so far as it is applicable to a court of equity, and other pertinent sections of Articles 16 and 93, were extracted from the statutes mentioned and incorporated in substance into a former rule (Maryland Rule 1380) of this Court, which became effective on January 1, 1959, but which, as amended and revised, was superseded by Rule V80 as of January 1, 1962. Section c of the former rule, concerning the qualifications of the transferee, his appointment and residence, authorized the transferal of property belonging to nonresidents to a person who had given adequate security and had "properly qualified in a fiduciary capacity in *a court of competent jurisdiction of any state,*" and further provided, as did § 188 of Art. 16, that the residence of the transferee could be in this *State or elsewhere.*

The current rule provides in pertinent part as follows:
> "Rule V80. Transfer of Fiduciary Estate to Another Fiduciary.
> a. *Application of Rule.*
> 1. Generally.

---

3. By Ch. 340 of the Acts of 1929 (now codified as § 133 of Art. 16), the Legislature declared that nothing in § 133 (forbidding appointment of a nonresident as a committee except in case of reciprocity) should be construed "to affect in any way the provision of law relating to the transfer of property in this State belonging to persons non compos mentis in another state or country." The meaning and purpose of this proviso is not clear, and, since it is not likely that it was intended to confer any new substantive right, we shall disregard it.

A court of equity may, pursuant to this Rule, authorize the transfer, payment or delivery of a legacy, bequest or distributive share in an estate administered in an equity court of this State, the proceeds of a sale made under an equity decree, or the corpus or income of any fiduciary estate, whether invested or uninvested.

[But it is to be noted that sales under Rule 179 (Sale of Property of Nonresident under Disability) are explicitly excluded by this Rule V80.]

 b. *Qualifications of Transferee — Appointment — Residence.*

The court may authorize property to be transferred, paid or delivered pursuant to this Rule only to a person who has properly qualified to act in a fiduciary capacity under the laws of any *foreign jurisdiction,* whether as trustee, executor, administrator, committee, guardian or otherwise, and has given adequate bond or other security for the performance of his duties if bond or other security is required by the laws of such jurisdiction. Such person may reside in Maryland or elsewhere.

\* \* \* \* \*

 e. *Order Authorizing Transfer—Condition.*

Authority may be granted to transfer, pay or deliver property pursuant to this Rule only where the court finds that such transfer, payment or delivery will be in the best interest of the persons beneficially interested in the estate."

Other than recognizing the fact that it is the policy of this State to permit the estates of certain nonresidents to be transferred to foreign fiduciaries, the few Maryland cases on the question of whether the word "state" may also signify a foreign state in the international sense as well as one of the states in this country, are not helpful for the simple reason that the *foreign state* involved in each case examined was one of the states of the United States and not a *foreign country.* See, for instance, *Clay v. Brittingham,* 34 Md. 675 (1871) and *Gerke v. Colonial Tr. Co.,* 117 Md. 579, 83 Atl. 1092 (1912). And cf. *Kraft v. Wickey,* 4 Gill & J. 332 (1832),

decided before the earliest of the statutes (§ 216 of Art. 93) permitting an estate of a nonresident to be transferred to a nonresident fiduciary. Moreover, such of the cases in other jurisdictions as were cited to us (and we found no others) holding that the word "state" in the context in which it was used in such cases signified a foreign country, are not, we think, directly in point here. See *Foster v. Stevens,* 22 Atl. 78 (Vt. 1891); *Boissevain v. Boissevain,* 129 Misc. 5 (N. Y. 1927), *reheard* 130 Misc. 161 (N. Y. 1927), and *reversed* 224 App. Div. 576 (N. Y. 1928); and *Fessenden v. R. C. A.,* 10 Fed. Sup. 394 (D. C. Del. 1935), citing the *Foster* case and the *Boissevain* case (129 Misc. 5) though it had then been overruled. We note, however, that the principles on which the English courts act, in exercising the discretionary power to transfer property to a foreign fiduciary (even though the transferee may not be entitled to transfer as a matter of right), are (i) that a foreign fiduciary, having title to the property sought to be transferred, is entitled to demand delivery of it; and (ii) that on the general principle of private international law, the courts are bound to recognize the authority conferred on a foreign fiduciary by a foreign court. See *Didisheim v. London and Westminster Bank,* [1900] 2 Ch. 15; 33 Digest 202, *1066.* See also *Re Brown,* [1895] 2 Ch. 666; 33 Digest 220, *1288,* and other cases referred to in the notes to § 134 of the Lunacy Act in 17 *Halsbury's Statutes of England* (2nd ed. Burrows 1950), p. 1119.

But in the instant case, even if we assume, without deciding, that the word "state" in the context used in the several statutes, which became the nucleus of former Rule 1380, means only another state in this country and not a state in the broader sense, we think the use of the term "foreign jurisdiction" in the context in which it appears in the amended and revised Rule V80 is definitely broad enough to comprehend a foreign country as well as a state of the United States. The term "foreign jurisdiction" is usually defined in the law dictionaries as a jurisdiction other than that of the forum. Nevertheless, while the word "foreign" applies to the several states within this country, it is also applicable to other sovereign states outside of the United States; and when the word "jurisdiction"

is used with relation to a country in a political sense it usually refers to a branch of the government of that country. Other than this, the provisions of Code (1957), Art. 35 [Evidence], § 32, clearly indicate that a "foreign jurisdiction" may be a jurisdiction other than that of a state, district or territory of the United States.

We think it is clear that Rule V80 is a procedural rule, and, since it is, the authority the lower court exercised in permitting transferal of the estate of the beneficiary to the receiver in Great Britain—after determining that the transferee had duly qualified as a fiduciary in a court of competent jurisdiction and that the transfer would be in the best interest of the person beneficially interested—was a matter of procedure that the court had a duty to apply.

Furthermore, while the rules of procedure may not abridge, enlarge or modify the substantive rights of a litigant, they are to be liberally construed, and, upon taking effect, they supersede all prior inconsistent public general and public local laws, municipal ordinances and rules of this and any other court. Code (1957), Art. 26 [Courts], § 25. Moreover, such rules as are made and adopted by this Court under its rule-making power have the force of law until rescinded, changed or modified by us or by the General Assembly. Constitution, Art. IV [Judiciary Department], §§ 18, 18A. See also Rule 1 a, b, e and Rule 2 a, particularly the latter. And, since the amendment and revision of a rule affecting procedural matter "applies to all actions whether accrued, pending or future," in the absence of an expression to the contrary, *Richardson v. Richardson*, 217 Md. 316, 320, 142 A 2d 550 (1958), we think Rule V80 is applicable to this proceeding and is dispositive of the issue raised.

The decree of the lower court will therefore be affirmed.

> *Decree affirmed; the costs to be paid out of the trust funds.*